**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

|  |  |  |
|---|---|---|
| David Gjelland and Danielle McQuaid, Individually and on behalf of all others similarly situated, | ) ) ) ) | Case No.: 1:21-CV-1178 |
|  | ) |  |
| Plaintiffs, | ) | (Jury Trial Demanded) |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| Elanco Animal Health, Inc., | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

## COMPLAINT

### INTRODUCTION

1.     Elanco advertises itself as a "global animal health leader" that "rigorously innovate[s] to improve the health of animals", including pets like cats and dogs.  It is, in fact, one of the world's largest animal healthcare companies.

2.     Despite Elanco's commitment to animal health, however, it has knowingly put on the market a flea and tick preventative pet collar that is dangerous to the dogs and cats that wear it—the Seresto pet collar.

3.     Seresto is a flea and tick preventative developed by Bayer and now owned by Elanco. Unlike other flea and tick preventatives that are applied in small doses monthly in a topical or oral form, each Seresto pet collar contains 8-months' worth of pesticide that supposedly releases slowly but continuously over time.  Seresto purportedly uses a "Sustained Release Technology" that releases the pesticides in small amounts but enough to allow it to spread and cover the dog or

cat "from head to toe, and even the tail." Seresto is advertised to be worn continuously over the eight-month period.

4.     Wearing Seresto, however, may be dangerous to pets and poses a risk of serious medical injury, even death, to the cats and dogs that wear it. In March 2021, the Center for Midwest Investigative Reporting and USA Today published an article examining over 75,000 complaints to the EPA that Seresto caused adverse medical reactions in pets and occasionally, humans. Of those complaints, nearly 2,000 reported that their pet died after or while using Seresto. Additionally, Seresto has been linked with a host of neurological and other medical complications in pets, including, among other things, seizures, lethargy, cancer, loss of mobility, and loss of hair.

5.     The problem with Seresto is its use of two different pesticides, imidacloprid and flumethrin, that, while allegedly safe when used separately, pose serious complications when used together. In fact, Seresto is the only flea and tick preventative available that uses a combination of imidacloprid and flumethrin.

6.     Additionally, unlike most flea and tick preventives, which provide 1-month doses, Seresto contains 8-months' worth of pesticides in a single pet collar that is worn continuously, even in the water. Thus, pets wearing the collar may be exposed to 8 times the allegedly safe, monthly levels of the pesticides, putting them at risk of significant harm.

7.     Whether due to the adverse combination of imidacloprid or flumethrin or due to unsafe exposure levels, the Seresto pet collar is dangerous and, in some cases, deadly. Elanco knew or should have known that the Seresto collar is dangerous. Elanco had access to data evaluating the safety and efficacy of the Seresto collar, and Elanco further knew of the many complaints of adverse medical issues caused by the use of Seresto submitted to the EPA, to Elanco directly, or made online. Although Elanco understood the risks Seresto posed, it failed to warn

the public of the potential harm the Seresto collar could cause.  Instead, it represented that Seresto was a safe alternative to other flea and tick preventative measures and continues to make those representations.

8.     Due to the dangers of the pesticides and Elanco's failure to warn of them, Plaintiffs suffered harm.  Plaintiffs Gjelland and McQuaid both bought Seresto collars for their dogs from Elanco-approved suppliers,[1] and each believed the product was safe.  Each of their dogs, however, died while using Seresto.  After three years of use, Gjelland's dog, Amber, developed a serious cancer attributable to the pesticides in Seresto's pet collar.  After $18,000's worth of treatment, Amber improved.  Unaware of the hidden danger, Gjelland continued to use the Seresto collar on Amber and later, her cancer returned.  Amber's conditions worsened dramatically, which required her to be euthanized on January 1, 2021.

9.     Plaintiff McQuaid's dog, Lily, also used a Seresto pet collar.  In 2019, Lily suddenly became lethargic, confused, and unable to walk while wearing the Seresto pet collar. McQuaid brought Lily to the vet several times in search of a treatment, but the vet had no answers. Lily continued to worsen, however, and on her last trip to the vet, Lily suffered a seizure and died. Neither Lily nor Amber had ever had any major medical issues previously.

10.    Each Plaintiff purchased their Seresto collars from Elanco-approved retailers, including Chewy, Amazon, and Tractor Supply Co.  Elanco's website, PetBasics, lists these retailers as "approved" and claims customers can be sure they are purchasing "genuine" and "authenticate" Seresto collars from those, and several other, stores.[2]  Each of Plaintiffs' pets,

---

[1] A list of Elanco-approved suppliers are available online at *Buy Seresto*, PetBasics (last visited Apr. 27, 2021), https://www.petbasics.com/campaign/buy-seresto/.  *See also Seresto for Cats and Dogs FAQs*, PetBasics (last visited, Apr. 27, 2021) (stating that pet owners can "purchase real and genuine Seresto products from authorized . . .retailers . . . ."), https://www.petbasics.com/faq/seresto-cats-and-dogs?species=dog.
[2] *See supra* note 1.

despite previously being in good health, developed serious medical issues after using Seresto.  Had Elanco warned of the risks posed by its product and the pesticides in it, Plaintiffs would not have purchased Seresto or would have paid significantly less.  As a result of Elanco's misrepresentations and omissions, each Plaintiff suffered both financial and emotional harm.

11.     Plaintiffs now bring this action on behalf of themselves and on behalf of a Nationwide Class of consumers who purchased the Seresto collar, as well as subclasses comprised of purchasers in New York and Wisconsin.  Plaintiffs bring claims against Elanco for each of the following: (1) violation of the Indiana Deceptive Sales Practices Act, (2) violation of the New York General Business Law, (3) violation of the Wisconsin Deceptive Trade Practices Act, and (4) unjust enrichment.  Plaintiffs seek recover for their injuries and all remedies available under the law, including injunctive relief.

## JURISDICTION

12.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act, which affords federal courts with original jurisdiction over cases where any member of the plaintiff class is a citizen of a state different from any defendant, and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  Here, each Plaintiff is diverse from Defendant because Plaintiffs reside in New York and Wisconsin, and Elanco resides in Indiana, where it is headquartered and incorporated.  Plaintiffs allege that, in the aggregate, the claims of all Class members exceed $5,000,000, exclusive of interest and costs.

13.     This Court has general personal jurisdiction over Elanco because Elanco is headquartered in Indiana.  Elanco has minimum contacts with Indiana because it is located there and conducts substantial business there.

14.     This Court is the proper venue for this case pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in Indiana and because Elanco conducts a substantial part of their business within this District.

## PARTIES

15.     **Plaintiff** David Gjelland is a resident of Lake Grove, New York.  He purchased Seresto for his dog, Amber, from Elanco-approved suppliers and used the product continuously over a three-year period starting in 2018.  In 2020, Amber developed lymphoma due to the collar and, ultimately, had to be put down on January 1, 2021.

16.     **Plaintiff** Danielle McQuaid is a resident of Green Bay, Wisconsin.  Danielle used Seresto for her dog, Lily, who passed away in 2019.  Upon using Seresto, Lily became lethargic, could not stand up, and suffered from confusion.  McQuaid brought Lily into the veterinarian for multiple visits for treatment.  Lily, sadly, passed away after suffering from a seizure.

17.     **Defendant** Elanco Animal Health, Inc. is the world's second largest animal health company.  It is headquartered in Greenfield, Indiana and incorporated in Indiana.  Elanco owns the Seresto pet collar, which it advertises as a safe flea and tick treatment for dogs and cats.

## FACTUAL ALLEGATIONS

A.     **Elanco and Its Seresto Pet Collar.**

18.     Elanco Animal Health ("Elanco") provides health-related products and services to farm animals and pets, including vaccines, pet therapeutics, and pet products.

19.     Elanco touts itself as a "global animal health leader" that "rigorously innovate[s] to improve the health of animals", and asserts it adheres to three core values: "Integrity: Do the right thing in the right way", "Respect: Respect for people, our customers and the animals in their care", and "Excellence: Be accountable. Continuously improve. Deliver with discipline."

20.     As a company focused on pet and animal health, Elanco fully knows of the hardship, both financially and emotionally, of caring for a sick pet.  Elanco claims it "understand[s] the unique and loving bond pet parents share with their pets" and promises "to make sure your pets live a longer, healthier life."  It also claims that its "animal research and development focuses on innovative, effective products and therapeutic solutions for pets" that "treat pain and prevent disease, enhance and extend quality of life, and improve the type of care that pets receive."

21.     Elanco rakes in billions of dollars from pet and farm animal owners.  In 2020, despite the coronavirus economic downturn, Elanco saw revenues exceed $3.25 billion.  The Seresto collar, specifically, has been immensely profitable.

22.     Seresto is an over-the-counter flea and tick preventative pet collar available in three sizes, Small Dogs, Large Dogs, and Cats.  Seresto was initially developed by Bayer in 2012.  In August 2020, Elanco secured the Seresto brand as part of a $5.17 billion purchase of Bayer's Animal Health services division, which made Elanco one of the largest stand-alone veterinary-medicine companies in the world.

23.     Elanco advertises Seresto as a flea and tick collar that releases small doses of two pesticides, imidacloprid and flumethrin, over an 8-month period.

 

*Image 1. A picture of the front and back labels on the tin container provided with the Seresto pet collar.*

24.     Flea and tick prevention is necessary to protect pets from the annoyance and potential harm from disease carrying pests.  The American Kennel Club, for example, writes that "dog owners know that their canine companion's warm body and soft fur is a personal paradise for these insects" and that "once they move in – and begin feeding on your pet's blood – they can cause a wide range of health problems, from skin infections to Lyme disease."[3]

25.     Most flea and tick preventatives provide one-month doses that are administered either orally through a pill or a topical application applied to the back of the neck.  For instance, Frontline Plus, one popular flea and tick preventative, uses an applicator that places the preventative on the back of the pet's neck, and is applied monthly.

26.     Seresto, by contrast, places two pesticides in a collar that supposedly releases the chemicals over an 8-month period.  One advertisement claims that "two active ingredients" act as a "flea and tick fighting combo that slowly and continuously releases in low concentrations from within the collar . . . ."[4]  It claims that "thanks to your dog's skin and coat" the pesticides "spread from head to toe, even the tail."  The advertisement goes on to assert "some call [the collar] magic, but we call it science."

---

[3] https://www.akc.org/expert-advice/health/flea-and-tick-prevention-tips/
[4] https://www.youtube.com/watch?v=lXdkBOOTSJE



*Image 2. A screenshot from a video on PetBasics describing how Seresto works by continuously releasing the active ingredients (i.e. pesticides) that spread throughout the pet's body.*

27.     Elanco owns or otherwise operates the PetBasics website and YouTube Channel. One PetBasics video claims Seresto is the "#1 selling non-prescription flea and tick brand" and links to an article on Petbasics.com that states "Seresto for Dogs offers the performance you expect from a monthly flea and tick treatment like topicals or pills, with the convenience of an easy-to-use 8-month collar.  You read that right.  One effective, odorless, non-greasy collar = 8 months of protection."  It, additionally, claims Seresto uses an "innovative Sustained Release Technology" that "kills and repels fleas and ticks for 8 continuous months."

28.     Elanco asserts that Seresto helps prevent "diseases that may compromise your dog's health" and offers information "about prevention, treatment and the ways you can help protect your dog."  Indeed, the label on the Seresto tin that contains the pet collar claims that the product "Kills and Repels Fleas and Ticks" and that the product is "Vet-Recommended" and "Engineered to Help Protect Dogs From: Fleas, Ticks, Chewing Lice, and Sarcoptic Mange".

29.     Neither the label or Elanco's website, however, provide warning that the two pesticides, whether individually or in combination, can cause harmful side effects and even death to pets who wear the collar.  Additionally, Elanco provides no warning that, given the fact 8 months' worth of pesticide is contained in the collar, that pets may, whether incidentally or by failure of Seresto's "Sustained Release Technology", may be exposed to dangerous levels of pesticide.

30.     Although Elanco does not warn about the dangers Seresto poses to pets, it clearly understands its product is dangerous.  For instance, the label states: "DO NOT LET CHIDLREN PLAY WITH THIS COLLAR OR REFLECTORS[.]"  Elanco's label also warns users to "not use container for food storage or other purposes", and that the collar be "store[d] in original unopened container in a cool, dry place that is inaccessible to children."

31.     Customers pay a premium for Seresto pet collars.  On Amazon.com and Chewy.com, the three varieties of Seresto pet collars—large dog, small dog, and cat—cost nearly $60.  Other, comparable flea and tick collars cost significantly less, including the Runok pet collar ($15.95), Tevrapet Activate II collar ($34.97), Sobaken collar ($28.49), and Parenda ($22.95).  Indeed, Seresto has proven profitable for Elanco and, previously, for Bayer.  In 2019, for instance, Bayer reported that it made $300 million on sales of Seresto alone.

32.     Despite its profitability, Seresto has proven to be dangerous and, in some cases, deadly for the pets who use it.

**B.     Reports that Seresto Causes Pets Serious Harm.**

33.     Despite Elanco's, a pet health company, promise to "rigorously innovate to improve the health of animals" and its claims that it will "[d]o the right thing in the right way" and "[b]e

accountable [and] [c]ontinuously improve[,]" Elanco has not delivered.  Elanco's Seresto dog
collar has proven extremely harmful and even deadly to the dogs and cats who wear the collar.

34.     The Environmental Protection Agency ("EPA"), the agency responsible for
regulating products that contain pesticides, has received tens of thousands of complaints about
Seresto.  Specifically, under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"),
the EPA must make a determination that a product will not cause "unreasonable adverse effects
on the environment, meaning, in part, that it will not cause "any unreasonable risk to man or the
environment," taking into account the economic, social, and environmental costs and benefits of
the use of any pesticide."  Manufacturers are required under FIFRA to report adverse reactions
and individuals may also report incidents, which the EPA may review at its discretion.

35.     In March 2021, the USA Today and Midwestern Center for Investigative Reporting
published an article detailing numerous serious complaints of adverse side effects associated with
Seresto.  According to the article, since its approval in 2012, Seresto consumers have submitted
nearly 75,000 incident reports involving injuries to pets (and, occasionally, people) due to the
collar.  Almost 1,700 of those complaints involved the pet's death.  According to one former EPA
employee, that is the most incidents she has ever seen with a pet pesticide product.[5]

36.     According to the EPA's records, Seresto has been associated with numerous and
significant adverse side effects, including lethargy, loss of motor function, scabs and rashes,
seizures and cancer.  Given the breadth of issues and number of complaints, it is, as one reporter
put it, "likely that even these high numbers of reports are only the tip of the iceberg.  Few people,

---

[5] https://investigatemidwest.org/2021/03/02/popular-flea-collar-linked-to-almost-1700-pet-deaths-the-epa-has-issued-no-warning/

myself included, would think of reporting an incident involving a flea and tick collar to the EPA.

For that matter, it's unclear how the public would know which government agency to report to."[6]

37.     Numerous complaints on Amazon, Chewy and other forums, support that sentiment

and confirm that Seresto is associated with significant medical issues:



_____

[6] https://thebark.com/content/seresto-flea-tick-collar-unsafe-dogs

 Charles Fernandez

★★☆☆☆ **A word of warning, your experience may be different**

Reviewed in the United States on January 18, 2017

**Verified Purchase**

I think this collar is an acceptable option for those who are skeptical on how well monthly topical solutions perform. Especially on the third or fourth week of use with those competitors. In my experience now with three different dogs wearing these collars, I have only found ticks a few times, and this is normally around the seventh or eighth month of use. This is my indication that it is time to change the Seresto Collar.

After two years of using Seresto I will not be purchasing these again. Two of my dogs have developed a terrible reaction to the chemicals that resulted in a nasty rash that needed treatment with antibiotics to prevent infection. They developed these rashes over time perhaps due to the gradual exposure to the chemicals. Chemicals the collars are designed to release to prevent fleas and ticks. I assumed my first dogs reaction was just a unique experience, but the most recent happened just this past week of 01/09/17. I will not let it happen a third time. It is effective at what it does, but as might be the case for some users and their pets, it might be too effective.



 TravelingMan

★☆☆☆☆ **Australian Shepard develops alergic reaction**

Reviewed in the United States on June 25, 2017

**Verified Purchase**

Our Australian Shepard developed severe itching and became very irritable after installing this Bayer Flea and tick collar. She started running into walls in our home and became very delirious. Contacted Bayer on their emergency telephone number on a Sunday afternoon and they were very helpful. Had to bath Zoey three times with Dawn detergent and remove the other collar off of Gabby, who had no reaction, but had the oil from the Bayer collar. Poor Gabby also had to be bathed three times with Dawn detergent. After three more days Zoey fully recovered. Be very careful with this collar. It put us through pure hell.

677 people found this helpful

| Helpful | ｜ Report abuse |

 DJM

★☆☆☆☆ **BEWARE**

Reviewed in the United States on May 8, 2018

**Verified Purchase**

I started using the Seresto Collar for my 115 lb dog because he had reactions to the Trifexis and Nexgard. The first collar worked great, no fleas for about 7 months. Order another one and was very disappointed, didn't seem to work as well. Ordered a 3rd one because I felt I had no choice since the reactions to the oral flea meds. After about 2 weeks after using the 3rd one, I noticed some neurological problems. He was weak in the rear legs, lethargic, had a head tilt to the left and unable to control his BM. At first I thought it was his age, he will soon be 12 years old. I removed the Seresto collar just to see if it was a reaction. I gave him a bath with Dawn dish soap to remove any of the chemicals from the Seresto collar. After 12 hours, he was much improved, after 48 hours he was almost back to normal. I just called the Bayer Company to report what had happened and the rude woman on the phone told me that there was NO WAY the Seresto Collar caused any of the symptoms. Almost like she was shaming me for blaming the collar. Be very careful if you decide to use this collar. I have been searching the internet to see if others have had this problem, there are a lot of the same stories out there, not just mine. BEWARE almost lost my dog with this collar and Bayer will not listen, so guess I am out all that money as well. Google Seresto Collars and hang on for all the nightmare stories.

562 people found this helpful

[ Helpful ]   Report abuse

 Justine Coleman

★☆☆☆☆ **Severe Neurological Reaction...**

Reviewed in the United States on January 3, 2018

**Verified Purchase**

The good news was that my dog had no fleas. The bad part...my dog started experiencing very severe neurological symptoms about 8 weeks into use of the collar. We initially did not think it was the collar. The started knuckling a lot while she was playing and would lose her footing easily while running. This was very out of the norm for her. Then she would be walking and her two back legs would just go out and she could not get up. She was unable to jump on the bed or the couch and had to be picked up. She would have random severe muscle spasms while laying down. We took the collar off and went to the vet, who was very concerned. Thank goodness all of her blood work was good and there was no kidney or liver issues or detected cancer. It took about 5 months before she was back to normal. Her one back leg still doesn't seem to be the same, but she is alive. If your dog starts experiencing any of the above mentioned symptoms, take off the collar immediately. I wish I had never bought this. I believe it almost killed my dog.

421 people found this helpful

[ Helpful ]   Report abuse

 Marlene Beach

★☆☆☆☆ **BE VERY CAREFUL WITH THIS COLLAR**

Reviewed in the United States on July 7, 2018

**Verified Purchase**

I bought this collar in April 2018. Over the last 3 months, and my dog has over time has been walking funny due to his weakened back legs. Also, he is unable to jump up on the bed anymore. I believe this is because of this collar. Today, I removed the collar and will see if over the next couple of months he will be healed. I will then give an update to my review. I promised to update my review. It has almost been a couple of weeks since I wrote this review, and now my dogs back legs have healed since I removed this collar. He is now able to jump back up on the bed without any problems. If you find your dog's back legs have become weakened after a couple of months after wearing this collar, PLEASE REMOVE IT IMMEDIATELY as it is making your dog sick.

183 people found this helpful

[ Helpful ]   Report abuse

★☆☆☆☆ **Our dog was disoriented.**

By ChloesParents on Apr 9, 2021

Our dog (beagle)was disoriented immediately after I put it on her .I think the new company that bought the Pet division from Bayer must be doing something different with the manufacturing process. Kudos to Chewy for promptly refunding our money.

[ 1 👍 ]   Report 🏳



38.     The high rate of adverse reactions in pets who use Seresto pet collars has prompted significant concern.   Amazon, where Seresto is often bought, has received numerous complaints. Amazon recently announced that it will consider whether it should continue to sell the Seresto pet collar after the overwhelming number of complaints of pet harm, health impacts, and death. Amazon noted that it "actively monitor[s] our store for product safety concerns" and "[w]hen appropriate, [it] remove[s] products and reach[es] out to suppliers, manufacturers and government agencies for additional information."

39.     The EPA, likewise, has committed to reevaluating the health and safety of the Seresto pet collar.  The EPA wrote: "EPA understands that pets are part of the family in many American households and the agency is committed to following the science and the law as we work to address this issue and pursue our mission[.]"  The EPA, furthermore, claimed that the "EPA has returned to its core mission, which includes protecting our pets' health," that it "take[s] every incident reported seriously" and that it will "review the[] data to see whether action is necessary."[7]

---

[7] https://www.usatoday.com/story/news/investigations/2021/03/05/amazon-reviewing-seresto-flea-collar-amid-reports-illnesses-deaths/4586990001/

40. Members of Congress have also raised concerns about Seresto. Congressman Raja Krishnamoorthy, Chairmen of the Oversight Subcommittee on Economic and Consumer Policy in the United States House of Representatives called on Elanco to voluntarily recall Seresto pet collars pending an investigation into the harm caused to pets. As Congressman Krishnamoorthy noted, the "pesticide[s] on the Seresto pet collar aimed to kill fleas may also be harming the pets themselves and their humans."

41. Veterinarians have also raised concerns about the data. For instance, the Daily Paws interviewed Elizabeth Trapp, DVM, who had previously recommended Seresto to pet owners. She told the Daily Paws: "My takeaway is that it should be looked into" because "I want to recommend the best safe products for my patients" and "I do feel that maybe the safety studies should be looked at or perhaps some new safety studies should be done[.]"[8] Another veterinarian warned of the association between Seresto and seizures and recommends Seresto never be used by pet owners.[9]

42. Nathan Donley, a senior scientist at the Center for Biological Diversity and an expert on U.S. pesticide regulation, also expressed his concern with the high rate of harm by Seresto users: "My God, if this doesn't trigger a concern, that's a fundamental problem with the process[.] . . . The fact that the EPA has not done anything to alert the public that there might be an issue here strikes me as bordering on criminal."[10]

43. Despite the growing concerns and high rate of complications caused by Seresto, Elanco has refused to alert the public of the harm Seresto causes or to acknowledge any issue at all. Elanco stated it will not consider recalling the Seresto pet collar or commit to further

---

[8] https://www.dailypaws.com/dogs-puppies/health-care/seresto-flea-collars-veterinarian-advice
[9] https://healthydogworkshop.com/why-i-dont-recommend-seresto-collars/
[10] https://investigatemidwest.org/2021/03/02/popular-flea-collar-linked-to-almost-1700-pet-deaths-the-epa-has-issued-no-warning/

investigation or to issue any warning to the public about Seresto's safety, calling the injuries, that include death, "non-serious effects" that affect a small percentage of pets.[11]  Elanco maintains that pet health is its priority.

44.    Elanco has instead sought to deflect blame to supposedly "unauthentic" Seresto collars, asserting that "[i]t's crucial that pet owners purchase real and genuine Seresto products." That claim is disingenuous.  While fake collars may be available from unapproved sellers, as described below, each Plaintiff purchased Seresto from the list of "authorized and "trusted retailers" that Elanco provided.   Elanco's website, PetBasics, states that "[i]t's critical that pet owners purchase real and genuine Seresto products from authorized veterinary clinics and trusted retailers to help ensure product authenticity and performance.  Find Seresto at a clinic or retailer online or near you."[12]  PetBasics provides a link to twelve approved retailers:[13]

---

[11] https://www.consumeraffairs.com/news/congress-asks-seresto-to-recall-tick-and-flea-collars-after-thousands-of-pet-deaths-and-complaints-031921.html

[12] *Seresto for Cats and Dogs FAQs*, PetBasics (last visited, Apr. 27, 2021), https://www.petbasics.com/faq/seresto-cats-and-dogs?species=dog.

[13] The list of approved retailers can be found online at *Buy Seresto*, PetBasics (last visited Apr. 27, 2021), https://www.petbasics.com/campaign/buy-seresto/.

**Find Online**



*Image 3. A list of Elanco-approved retailers selling genuine Seresto products, as provided by PetBasics.*

45.     Although the Plaintiffs each purchased Seresto from approved retailers, each had a pet injured due to its use of Seresto.

46.     Elanco, in short, has failed to and continues to fail to warn the public about the dangers of Seresto, telling the public instead that Seresto is safe for pets even though it knew or should have known that Seresto was dangerous due to the combination of the pesticides it uses or the failure to adequately control exposure levels to those pesticides.

47.     One former EPA employee explained that the issue is likely due to reaction caused by the use of imidacloprid and flumethrin in combinations.[14]  Seresto is the only flea and tick product that uses a combination of imidacloprid and flumethrin, regardless of its mechanism of administration (oral, topical, or collar).

---

[14] https://investigatemidwest.org/2021/03/02/popular-flea-collar-linked-to-almost-1700-pet-deaths-the-epa-has-issued-no-warning/

48.     While, according to Elanco, each pesticide has been separately approved for use as a pet flea and tick pesticide, it may be the combination of those pesticides that causes high rates of harm.  Indeed, while Imidacloprid has been long-approved as an insecticide on crops in the United States, there is growing evidence that mammals can be harmed by it as well.  Flumethrin, unlike imidacloprid, is not used in any other product.

49.     When used together, the effect may be dangerous and potentially deadly.  As Donley, a scientist at the Center for Biological Diversity, put it when discussing the number of complaints, "[y]ou don't even see these kind of numbers with many agricultural chemicals" and "[f]or whatever reason, this combination is just really nasty."[15]

50.     Supporting that possibility, studies have found that separately, imidaclprid and flumethrin can be dangerous and cause adverse health effects.  One study found that exposure to imidacloprid, one of Seresto's two pesticides, caused neurobehavioral impairments in other types of animals.[16] Numerous complaints, including from Plaintiffs, describe neurological issues with pets using Seresto, including confusion, lethargy, loss of mobility, and seizures.  Another study found humans exposed to high levels of pesticides, including flumethrin, one of Seresto's pesticides, have increased levels of pancreatic cancer, leukemia, and other cancers.[17]

51.     Other studies have linked high exposure to pet pesticides in general that may have adverse health outcomes.  For instance, a study done by the Natural Resources Defense Council found that the chemicals in flea and tick collars "are highly hazardous to animals and humans, and

---

[15] https://investigatemidwest.org/2021/03/02/popular-flea-collar-linked-to-almost-1700-pet-deaths-the-epa-has-issued-no-warning/

[16] Emily B. Crosby, et al., *Neurobehavioral Impairments Caused by Developmental Imidacloprid Exposure in Zebrafish*, 49 Neurotoxicology Teratology 81 (2015).

[17] John Bear, et al., *Health Impacts of Pesticide Exposure in a Cohort of Outdoor Workers*, 111 Environ. Health Perspectives 724 (2003)

can damage the brain and nervous system, and cause cancers."[18]  That study determined that "high levels of pesticide residue can remain on dog's and cat's fur for weeks after a flea collar is put on an animal" and that "[r]esidue levels produced by some flea collars are so high that they pose a risk of cancer and damage to the neurological system of children up to 1,000 times higher than the EPA's acceptable levels."[19]  Notably, Seresto advertises that its pesticides or "active ingredients" spread throughout the pet's body, from "head to toe" and do so "continuously" over 8-months.

52.     While imidacloprid and flumethrin may be dangerous separately, their use together appears to be particularly problematic.  In fact, Bayer's 2012 study related to the Seresto collar and the safety of its two pesticides found imidacloprid and flumethrin had a "synergistic effect" and "unique pharmacological synergism" that made them more toxic for fleas.  That combined, more dangerous effect may not be limited to fleas and ticks, but may also be causing complications in the pets who wear the collar.

53.     Indeed, although all flea and tick collars rely on some type of pesticides, no other flea and tick product has garnered as many complaints or resulted in as many complications as Seresto.  For instance, other flea and tick collars using different pesticides have had significantly fewer complaints than Seresto.  From 1992 to 2008, the EPA received about 4,600 incident reports regarding pet collars that use a different pesticide, tetrachlorvinphos, including 363 reported deaths.  That is 30 times fewer incidents and 10 times fewer deaths than Seresto has caused in half the time, over just 8 years.  The National Resources Defense Council in 2009, before Seresto was on the market, found tetrachlorvinphos was one of the most dangerous pesticides at that time.  The magnitudes more complaints of Seresto and the severity of the adverse effects it causes suggest

---

[18] Miriam Rotkin-Ellman, et al., *Issue Paper: Toxic Chemicals in Flea and Tick Collars*, Natural Resource Def. Council (2009).
[19] *Id.*

that Seresto's pesticides, at least when used in combination, have easily surpassed tetrachlorvinphos as the most dangerous flea and tick pesticides on the market.

54.     Additionally, even if Seresto's pesticides may be safe at low levels, the collar's design poses the possibility that pets are exposed to high, dangerous levels of pesticides because Seresto contains 8-months' worth of pesticide in a single collar that is meant to be worn continuously.  That is not the case with most flea and tick preventatives, where safe, monthly doses are provided once each month.

55.     Supposedly, Seresto uses an undescribed "Sustained Release Technology" that prevents the pesticide from being released in high doses.  However, Elanco acknowledges that Seresto releases the pesticides "continuously" and that the pesticides spread throughout the pets' skin, reaching from head to toe, and even the tail.

56.     Doses of the pesticides that exceed safe levels are dangerous and may cause harm. Notably, the California Department of Pesticide Regulation rejected certain studies when evaluating Seresto, finding that "the multiple collar tests evidently greatly under-estimate exposures" and thus, the Department "did not accept th[ose] adult dog and cat studies[.]"[20]

57.     If Seresto's "Sustained Release Technology" is defective, then exposure levels may be too great, resulting in the numerous and often significant side effects.

58.     Whether the dangers stem from the combination of two pesticides (which no other product uses), the amount of pesticide in the collar, or a defective pesticide release technology, Seresto's pet collars cause significant harm.  Given the many complaints issued to Elanco, to government agencies like the EPA, or made publicly online, Elanco knew or should have known

---

[20] https://investigatemidwest.org/2021/03/02/popular-flea-collar-linked-to-almost-1700-pet-deaths-the-epa-has-issued-no-warning/

Seresto was dangerous to pet health.  Yet, it failed to warn the public and, instead, represented that Seresto was safe.

**C.      Plaintiffs' Pets Suffered Harm Due to Seresto**

*David Gjelland*

59.      Plaintiff Gjelland resides in Lake Grove, New York.  He started purchasing Seresto approximately 3 years ago for his rescue dog, Amber.  Prior to using Seresto, Amber was in excellent health and never had any major health issues.

60.      Over the course of three years, Gjelland used the Seresto collar on Amber, replacing it approximately every 8 months.  Gjelland purchased the Seresto collars from suppliers recommended by Elanco, including Amazon, and used Seresto according to the instructions provided.

61.      Around May 2020, Amber began to exhibit significant medical complications, including lethargy, trouble getting up, and other issues. Amber's lungs continually filled with fluid that had to be drained by her veterinarians, including, in some cases, up to a liter of fluid.  Amber's veterinarians performed medical tests to determine the cause of Amber's symptoms, and later diagnosed her with Lymphoma.

62.      After lengthy, exhausting, and expensive treatments, and numerous trips to the vet, Amber began to improve. Gjelland, however, continued to use the Seresto collar, and had not connected Amber's development of lymphoma to the pesticides in the collar.

63.      By December 24, 2020, however, Amber worsened.  She again started slowing down and her demeanor changed from happy and energetic to withdrawn and tired.   On Christmas Eve, Gjelland brought Amber to an emergency vet who found Amber's Lymphoma had returned and that, without extensive treatment, Amber would pass away soon.  In addition to fluid filling in

her lungs, Amber's spleen ruptured and she was suffering internal bleeding. At best, given the spread of the cancer, the vet believed Amber might live only a few more months if she had surgery, intense chemotherapy, her lungs drained of fluid, and a blood transfusion.

64. On December 31, 2020, Gjelland made the difficult decision to have Amber put to sleep.

65. Seresto has caused Gjelland significant costs, both financially and emotionally. Gjelland has lost his pet, Amber, unnecessarily, due to harm caused by the pesticides in Seresto. Additionally, he expended a significant amount of time, effort, and money treating Amber's lymphoma which is an illness reported among users of the Seresto collar. In all, Gjelland estimates Amber's treatment cost over $18,000. Had he known of the dangers of Seresto, he would not have purchased the product.

### Danielle McQuaid

66. Plaintiff McQuaid resides in Green Bay, Wisconsin and purchased Seresto for her dog, Lily.

67. McQuaid purchased Seresto only from retailers approved by Elanco and believed Seresto was a safe flea and tick product for her dog. McQuaid followed the provided instructions when applying and using the collar.

68. In 2019, upon putting the Seresto pet collar on Lily, the dog became lethargic. McQuaid brought Lily to a 24-hour vet and the vet agreed that Lily was suffering from discomfort. The vet provided a pain reliever medication. However, even after taking the pain reliever, Lily continued to be lethargic.

69.     Lily's condition continued to worsen.  Lily struggled to stand up or walk around and her tongue was hanging out of her mouth and drying up.  Lily also became confused, and when she finally stood up, she walked into a wall.

70.     McQuaid called the 24-hour vet and they asked McQuaid to bring Lily back.  While Lily was there, she suffered a seizure and passed away.

71.     Before this incident, Lily had never had any health issues, and given her breed, she was expected to live 18-20 years.  Lily, however, passed away at 13.

72.     Seresto has caused Ms. McQuaid harm, both financially and emotionally, including the costs of the Seresto collar and the emotional toll of the death of her pet, Lily.  Had McQuaid known of the dangers of Seresto, she would not have purchased the product.

## CLASS ALLEGATIONS

73.     Plaintiffs brings this action on behalf of themselves and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Classes:

**Nationwide Class.** Any person in the United States who purchased a Seresto Pet Collar.

74.     The Class Period starts from the length of the greatest applicable statute of limitations to the present.

75.     Alternatively, Plaintiffs propose the following subclasses:

**New York Subclass.** Any person in the State of New York who purchased a Seresto Pet Collar.

**Wisconsin Subclass.** Any person in the State of Wisconsin who purchased a Seresto Pet Collar.

76.     Plaintiffs reserve the right to modify the class definition or to add additional sub-classes.

77.     **Numerosity.**  Consistent with Rule 23(a)(1), all proposed Classes are so numerous and geographically dispersed that joinder of all Class members is impracticable.  Plaintiffs believe that there are tens of thousands, if not more, members of both the Nationwide Class and of each of the alternative State Classes.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

78.     **Commonality and Predominance.**  Consistent with Fed. R. Civ. P. 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members.   These common questions include, but are not limited to:

a.     Whether Seresto is dangerous to the health of pets, including dogs and cats;

b.     Whether Seresto caused serious adverse medical side effects, including death, in pets, including cats and dogs;

c.     Whether Elanco knew or should have known that Seresto was dangerous and could cause adverse side effects, including, but not limited to, death of the pet;

d.     Whether Elanco had a duty to warn consumers about the dangers posed by the Seresto pet collar;

e.     Whether Elanco misled consumers by omitting material health and safety information concerning the pet collars;

f.    Whether Elanco committed misrepresentations by claiming that it, as a company, provided healthy and safe pet products;

g.    Whether Elanco committed misrepresentations by representing that Seresto was safe for pets to use;

h.    Whether Elanco committed unfair, deceptive or misleading acts or practices;

i.    Whether Plaintiffs are entitled to injunctive relief; and,

j.    Whether Elanco's misrepresentations and omissions concerning the safety of Seresto for dogs and cats was material to consumers' purchasing decisions.

79.    **Typicality**.  Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiffs are typical of members of the Class.  Plaintiffs are pet owners who used the Seresto pet collar for one or more of their pets and, as a result, their pet suffered harm.  The type of injuries Plaintiffs' pets suffered are similar to those suffered by other members of the Class.  Plaintiffs seek relief consistent with the relief owing to Class.

80.    **Adequacy**.  Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiffs are adequate representatives of the Class because they are members of the Class and all are committed to pursuing this matter to obtain relief for themselves and for both proposed Classes.  Plaintiffs have no conflict of interest with the Class.  Plaintiffs also retained counsel competent and experienced in complex class action litigation.  Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

81.    **Superiority**.  Consistent with Fed. R. Civ. P 23(b)(3), class action litigation is superior to any other available means for the fair and efficient adjudication of this controversy,

and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the Class may be relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable.  Individual litigation by each Class member would also strain the court system, create the potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

82.  **Injunctive Relief.**  Consistent with Fed. R. Civ. P. 23(b)(2), Elanco has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the class as a whole.  Specifically, the Class includes pet-owners who purchase flea and tick preventatives for their pets.  Even though Seresto is dangerous, Elanco has refused to recall its products and to issue warnings describing the adverse medical effects that Seresto can cause.  Injunctive relief prohibiting Elanco from selling a dangerous flea and tick preventative that might adversely affect pet owners like those in the Class or requiring Elanco to disclose the potential adverse side effects that might affect the pets who use it would serve to provide relief to each member of the Class.

## CLAIMS

## COUNT I

**Violation of the Indiana Deceptive Consumer Sales Act, Ind. Code § 23-5, *et seq.***

**(On behalf of Plaintiffs and the Nationwide Class)**

83.     Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

84.     The Indiana Deceptive Consumer Sales Act ("IDCSA") was enacted to "simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices[,]" "protect consumers from suppliers who commit deceptive and unconscionable sales acts[,]" and "encourage the development of fair consumer sales practices." Ind. Code § 24-5-0.5-1(b).  The act is intended to be "liberally construed and applied to promote its purposes . . . ." *Id.* at § 24-0.5-5-1(a).

85.     The IDCSA prohibits "deceptive representations as to the subject matter of a consumer transaction," including: "[t]hat such a subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not" and that "[t]he consumer will be able to purchase the subject of the consumer transaction as advertised by the supplier, if the supplier does not intend to sell it."  *Id.* at § 24-5-0.5-3(a)(1), (11).

86.     Under the IDCSA, a "consumer transaction" means "a sale, lease, assignment, award by chance or other disposition of an item of personal property, real property, [or] a service . . . to a person for purposes that are primarily personal, familial, charitable, agricultural, or household, or a solicitation to supply any of these things."  *Id.* at § 24-5-0.5-2(a)(1).

87.     A person relying on an "uncured or incurable deceptive act may bring an action for damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater." *Id.* at § 24-5-0.5-4.

88.     An "uncured deceptive act" means a deceptive act where a consumer who has been damaged by such act has given notice to the supplier and either (1) no offer to cure has been made to such consumer within 30 days or (2) the action has not been cured as to such consumer within a reasonable time after the consumer's acceptance of the offer to cure.

89.     An "incurable deceptive act" means a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead.

90.     Elanco has committed an "incurable deceptive act" within the meaning of the IDCSA.

91.     Specifically, Elanco knew of the dangers posed by its Seresto product, both due to complaints filed publicly, directly with Elanco, and with the EPA.  Seresto, furthermore, knew that, at least one state department, the California Department of Pesticide Regulation, raised concerns about whether Seresto resulted in greater exposure than was claimed.  Elanco, thus, knew that Seresto potentially posed risks to pets who used it.

92.     Elanco, however, did not warn consumers about the dangers of Seresto.  Rather, it represented that Seresto was safe for dogs and cats and would only harm fleas and ticks and that it was an animal health company focused on creating products that contributed to healthy and happy pets.  Elanco knew that, should it inform customers of the health risks Seresto poses for dogs and cats who wear it, customers would no longer be willing to purchase the product.  So, instead, Elanco withheld the dangers of the Seresto collar, and continued to advertise it as a safe flea and tick prevention measure for pet owners to use.

93.     Seresto, however, is not safe.   As Elanco knew, Seresto is associated with significant adverse medical outcomes in a high number of pets.   Those outcomes include cancer, neurological issues, seizures, loss of mobility, and death, among others.

94.     As pet owners who purchased Seresto and had pets experience an adverse reaction due to Seresto, Plaintiffs and the Class suffered an injury.   All purchasers of Seresto were injured because they paid a premium for Seresto that they would not have paid had Elanco disclosed the risks associated with the collar.   Additionally, Plaintiffs and other members of the Class suffered further harm due to the financial and emotional stress of having to care for a sick pet.   Elanco acknowledges those difficulties of caring for a sick pet.   Here, however, Elanco's product created and contributed to those difficulties.

95.     Additionally, Plaintiffs have provided notice to Elanco in accordance with the IDSCA.   Should Elanco fail to respond or fail to address Plaintiffs' demands, Plaintiffs will amend the complaint to allege that Elanco also committed an "uncured deceptive act."

96.     Plaintiffs and the Class seek all damages and remedies, including equitable relief, allowable under the IDCSA.

## COUNT II

### New York General Business Law, § 349

### (On behalf of Plaintiff Gjelland and the New York Subclass)

97.     Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

98.     The New York General Business Law ("GBL") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."   N.Y. GBL, § 349(a).

99.     Under the GBL, "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." *Id.* at § 349(h).

100.    Although § 349 does not enumerate the prohibited deceptive acts, an act violates § 349 when it is: (1) a consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.

101.    Elanco's misconduct is consumer oriented because its acts have a broad impact on consumers at large, not just the Plaintiffs.  Elanco sells Seresto to the public at large, making it available for sale throughout the State of New York and the United States through brick and motor retailers, like Petco and PetSmart, and through online retailers, like Amazon and Chewy. Furthermore, Elanco has represented itself as a company focused on providing safe and healthy pet products and represented Seresto as a safe flea and tick preventative measure.

102.    Elanco's conduct is also materially misleading because Elanco represents that Seresto is a safe flea and tick preventative and, additionally, because Elanco has concealed and omitted that the pesticides in Seresto are unsafe for pets because of the adverse effects of the two pesticides when used in unison or because Seresto's Sustained Release Technology fails, resulting in exposure to high and unsafe levels of the pesticides.

103.    Plaintiffs and the Class suffered injury due to Seresto and Elanco's omissions and misrepresentations.  Had Plaintiffs and the Class known that Seresto could cause serious adverse medical events, they would not have purchased the product or would have paid significantly less. Plaintiffs and Class members have also suffered the emotional toll of watching their pets suffer significant side effects like seizures, and in some cases, death.  Plaintiffs and class members have

also suffered financial harm due to vet visits and treatments necessary to counteract harm caused by Seresto.

104.    Therefore, Elanco has violated NY GBL § 349 and caused Plaintiffs and the Class harm.  Plaintiffs and the Class seek all damages and remedies, including equitable relief, allowable under § 349.

## COUNT III

### Violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18

### (On behalf of Plaintiff McQuaid and the Wisconsin Subclass)

105.    Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

106.    The Wisconsin Deceptive Trade Practices Act ("WDTPA") states that "[n]o person, firm, corporation or association, or agent or employee thereof . . . shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public . . . an advertisement . . . [that] contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."  Wis. Stat. § 100.18(1).

107.    The WDTPA defines "deceptive advertising" to include acts that "make, publish, disseminate, circulate or place before the public . . . an advertisement, announcement, statement or representation of any kind to the public . . . [that] is part of a plan or scheme the purpose or effect of which is not to sell . . . [the] merchandise . . . as advertised."  *Id.* at § 100.18(9)(a).

108.    Elanco has made assertions and representations that are "untrue, deceptive, [and] mislead[ing]" in violation of the WDTPA.

109.    Specifically, Elanco knew of the dangers posed by its Seresto product, both due to complaints filed publicly, directly with Elanco, and with the EPA.  Seresto, furthermore, knew

that, at least one state department, the California Department of Pesticide Regulation, raised concerns about whether Seresto resulted in greater exposure than was claimed. Elanco, thus, knew that Seresto potentially posed risks to pets who used it.

110.    Elanco, however, did not warn consumers about the dangers of Seresto. Rather, it represented that Seresto was safe for dogs and cats and would only harm fleas and ticks and that it was an animal health company focused on creating products that contributed to healthy and happy pets. Elanco knew that, should it inform customers of the health risks Seresto poses for dogs and cats who wear it, that customers would no longer be willing to purchase the product. So, instead, Elanco withheld the dangers of the Seresto collar, and continued to advertise it as a safe flea and tick prevention measure for pet owners to use.

111.    Seresto, however, is not safe. As Elanco knew, Seresto is associated with significant adverse medical outcomes in a high number of pets. Those outcomes include cancer, neurological issues, seizures, loss of mobility, and death, among others.

112.    As pet owners who purchased Seresto and had pets experience an adverse reaction due to Seresto, Plaintiffs and the Class suffered an injury. All purchasers of Seresto were injured because they paid a premium for Seresto that they would not have paid had Elanco disclosed the risks associated with the collar. Additionally, Plaintiffs and other members of the Class suffered further harm due to the financial and emotional stress of having to care for a sick pet. Elanco acknowledges those difficulties of caring for a sick pet. Here, however, Elanco's product created and contributed to those difficulties.

113.    Plaintiffs and the Class seek all damages and remedies, including equitable relief, allowable under the WDTPA.

## COUNT IV

## Unjust Enrichment

114.    Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

115.    As described herein, Elanco sold and advertised Seresto pet collars as safe for pets to use and omitted information about serious adverse medical effects.  Furthermore, it charged a premium price for Seresto, more than any other flea and tick pet collar available on the market. Elanco generated profits by selling unsafe Seresto pet collars to Plaintiffs and members of the Class.

116.    Elanco, however, knew that its Seresto collars were capable of causing adverse reactions in pets, either because the combination of the two pesticides used in Seresto are dangerous or, alternatively, because the Sustained Release Technology used by Seresto fails to adequately limit exposure to the pesticides and results in unsafe exposure levels.  Elanco never disclosed that Seresto was unsafe for pets and may cause serious medical side effects, including death.

117.    Elanco, therefore, has been knowingly and unjustly enriched at the expense of and to the detriment of Plaintiffs and the members of the Class by collecting excess profits to which it is not entitled.

118.    Elanco has unjustly retained those ill-gotten gains and should be required to disgorge this unjust enrichment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

a.   For an Order certifying the Class as defined above, appointing Plaintiffs as Class representatives, and appointing Plaintiffs' counsel as Class counsel;

b.   For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiffs and Class Members,

c.   For equitable relief including an injunction stopping Elanco from continuing its misconduct, and for disgorgement, unjust enrichment, and all other available relief under applicable law;

d.   For reasonable attorneys' fees and expenses as permitted by applicable law;

e.   For pre- and post-judgment interest as allowed by law; and,

f.   Such further relief at law or in equity that this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of the Class, demand trial by jury as to all issues so triable in this matter.

PRICE WAICUKAUSKI JOVEN & CATLIN, LLC

Dated: May 11, 2021

/s/ Ronald J. Waicukauski
Ronald J. Waicukauski (#1089-53)
Brad Aaron Catlin (#21570-29)
The Hammond Block Building
301 Massachusetts Ave. 2nd Floor
Indianapolis, IN 46204
Tel: (317) 633-8787
Fax: (317) 633-8797
rwaicukauski@price-law.com
bcatlin@price-law.com

Brian C. Gudmundson
Michael J. Laird
Rachel K. Tack
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
brian.gudmundson@zimmreed.com
michael.laird@zimmreed.com
rachel.tack@zimmreed.com

ATTORNEYS FOR PLAINTIFFS